[Cite as *Ogle v. Hocking Cty. Sheriff*, 2023-Ohio-1446.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| State ex rel. Charles R. Ogle | : | Case No. 22CA9 |
| Relator-Appellant, | : | |
| v. | : | |
| | | <u>DECISION AND</u> |
| Hocking County Sheriff Lanny North, | : | <u>JUDGMENT ENTRY</u> |
| Respondent-Appellee, | : | **RELEASED 5/01/2023** |

<u>APPEARANCES</u>:

Charles R. Ogle, Rockbridge, Ohio, pro se.

Randall L. Lambert and Cassaundra L. Sark, Ironton, Ohio for respondent- appellee.

Hess, J.

**{¶1}** Charles R. Ogle appeals the trial court's judgment granting summary judgment to Hocking County Sheriff Lanny North on Ogle's complaint for a writ of mandamus filed pursuant to the Ohio Public Records Act, R.C. 149.43. Ogle raises the following six assignments of error: (1) the trial court erred when it granted summary judgment to the Sheriff because there is a genuine issue of material fact concerning whether the Sheriff could access records through a date and time search; (2) the Sheriff's affidavit does not meet the requirements of Civ.R. 56(E); (3) the trial court should have held an evidentiary hearing because of inconsistencies in the material facts; (4) the trial court erred in finding that the Sheriff was in compliance with his duty to maintain records under R.C. 149.43(B); (5) the trial court erred in finding that Ogle, through his requests,

was requiring the Sheriff to create a new document; and (6) the trial court erred in denying him statutory damages.

**{¶2}** We reject all of Ogle's assignments of error and affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL BACKGROUND

**{¶3}** On January 6, 2022, Ogle filed a complaint[1] for a writ of mandamus against the Sheriff in which he alleged that he requested records from the Sheriff on November 29, 2021. Ogle attached a copy of his November 29 requests to the complaint. Ogle asked for: (1) records of all incidences and interactions with any person and reported by or involving any deputies on September 16, 2016 between the hours of noon and midnight; (2) records regarding physical restraint, detainment, or arrest of any person by any deputy for that same date and time frame; (3) dispatch logs for that same date and time frame; (4) individual deputy logs for that same date and time frame; (5) dispatch logs for September 17, 2016 from noon to midnight; (6) individual deputy logs for September 17, 2016 from noon to midnight; (7) records regarding all citizens who entered the Sheriff's office for any purpose on September 17, 2016 from 6:00 a.m. to 6:00 p.m.; (8) records concerning inquiries about the filing of complaints, complaints filed, and interactions between citizens and deputies or other employees of the Sheriff's office regarding the filing of a complaint on September 17, 2016 between 6:00 a.m. to 6 p.m.; (9) records concerning inquiries about the filing of complaints, complaints filed, and interactions between citizens and Sheriff Lanny North regarding the filing of complaints on September 17, 2016 between 6:00 a.m. to 6:00 p.m.; (10) records which provide the name of any

---

[1] Ogle filed an amended complaint in February 2022, but the only modification was the addition of the parties' addresses on the face of the complaint.

person who inquired about filing a complaint on September 17, 2016 between 6:00 a.m. to 6:00 p.m.

**{¶4}** Ogle alleged that he received the Sheriff's response to his records request on December 20, 2021. Ogle attached a copy of the Sheriff's response, which is dated December 9, 2021, to his complaint. To Ogle's first two requests and requests seven through ten, the Sheriff informed Ogle that the requests were overly broad and ambiguous, but if Ogle clarified with specifics, the Sheriff would attempt to locate the records sought. The Sheriff also stated that some of the records were likely outside the retention period and therefore unavailable. The Sheriff informed Ogle that the records he sought in requests three and five had a three-year retention period and the records he sought in requests four and six had a two-year retention period. Therefore, none of the records Ogle requested in numbers three through six were available because they were five years old.

**{¶5}** The Sheriff's December 9, 2021 response also explained that the office had received a records request from Ogle in April 2021 and, as was explained in response to that April 2021 request, if Ogle was looking for records related to a specific incident and could provide the office with more information or a description of the incident, it would help them in locating and providing the records Ogle was seeking. The letter also explained that information such as report numbers, names of involved parties, the address or area of the incident, and the deputies involved would be some of the information that would assist the office in locating the records.

**{¶6}** Ogle alleged that the Sheriff's response did not provide an explanation, including legal authority, for why the requests were denied. Ogle claims that the Sheriff's

suggestion that Ogle appears to be looking for public records related to a specific incident is incorrect as he was not requesting records related to a specific incident. Instead, he alleged that his request was specifically and narrowly made for a date and time frame. Ogle alleged that the Sheriff violated the Ohio Public Records Act by failing to make copies of the records he requested within a reasonable time. Ogle also alleged that although he understood by the Sheriff's response that the records were not organized by date and time, the Sheriff failed to inform him of any other manner in which the records are maintained. Ogle alleged that it is unreasonable that the records cannot be accessed by date and time and therefore the Sheriff's response that the requests are "overly broad and ambiguous" is an attempt to wrongfully deny providing him with records. He claimed that he was entitled to statutory damages of $100 per day for each day the Sheriff failed to respond up to a maximum of $1,000. Ogle also alleged that the Sheriff was allegedly destroying records after two and three years even though those records could contain evidence of crimes committed by his deputies, which Ogle contends are actionable for two years after the deputies cease employment pursuant to R.C. 2901.13(C)(1)(a) (extending the statute of limitations for certain crimes by a public servant to "at any time while the accused remains a public servant, or within two years thereafter"). Ogle alleged that a May 14, 2010 court order compelled the Sheriff to preserve and cease destroying public records and evidence in Case No. 10CV0114, but that it appears from the Sheriff's December 9 response that he is destroying these records.

{¶7}   Ogle sought a preemptory writ of mandamus directing the Sheriff to produce the records he requested; preserve records that could apply to cases for which the statute

of limitations would not be expired, including the extended statute of limitations in R.C. 2901.13(C)(1)(a); and pay statutory damages, costs, and other relief.

**{¶8}** The Sheriff answered the complaint and amended complaint and admitted that Ogle sent a November 29, 2021 records request, the Sheriff sent a December 9, 2021 response, and the Sheriff did not provide responsive records to the request for the reasons outlined in the December 9 response. The Sheriff admitted that Ogle asked for records by date and time and that the Sheriff is unable to search for records based on date and time because certain requested records are not organized by date and time. The Sheriff denied that he failed to comply with his obligations under R.C. 149.43(B) or that he destroyed records in violation of the May 14, 2010 preservation order.

**{¶9}** The Sheriff asserted that some of the records Ogle sought are not public records, he is not entitled to a writ of mandamus, he made overly broad and ambiguous record requests, and that his requests require the Sheriff to conduct "improper research" and to create new records to accommodate the requests. The Sheriff also asserted that certain of Ogle's requested records were no longer available per the office's record retention schedule and that he gave Ogle an opportunity to revise his requests.

**{¶10}** A little over a month after the Sheriff filed his answer, the Sheriff filed a motion for summary judgment. Although Ogle's complaint focused solely on Ogle's November 29, 2021 records request, the Sheriff provided an affidavit that stated that Ogle's first records request was made about seven months earlier on April 1, 2021. The Sheriff responded to Ogle's April 1 request by response dated April 8, 2021 in which he explained that the request was overly broad and ambiguous, the record retention policy was three years for some of the records requested and two years for others, and, because

it appeared Ogle was looking for public records related to a specific incident, if Ogle would provide additional information like a time of day, name of involved parties, address or area of the incident, and deputies involved, the Sheriff would attempt to fulfill the requests. Ogle's April 1, 2021 records request and the Sheriff's response were submitted as exhibits to the Sheriff's affidavit. The Sheriff did not receive any further records requests from Ogle until the November 29, 2021 request, which contained the same ten categories of records contained in Ogle's April 1 request, except that Ogle added the time frames of noon to midnight and 6:00 a.m. to 6:00 p.m. to the September 16 and 17 dates contained in the April 1 request, as previously described. In addition, in his affidavit the Sheriff explained:

> Records, reports, logs, images and recordings are not organized by date, but by report numbers, the name of the individual the police encountered, and the address or area the incident occurred. To locate a document by a date, thousands of documents have to be reviewed to find interactions/incidences that occurred on a specific date. Pursuant to Hocking County Sheriff's Office Records Retention Schedule (see Affidavit Exhibit A-5), the retention period for accident reports is three years, the retention period for dispatch logs is three years, and the retention period for individual deputy logs (classified as "daily cruiser logs" in the Records Retention Schedule) is two years.

The Sheriff also explained that citizens who enter the Sheriff's Office are sometimes documented on dispatch logs, but dispatch logs are only maintained for two years and would not be available in 2021 for visits made in 2016. Surveillance records of citizens entering the building are retained until they are no longer of administrative or evidentiary value and the surveillance from 2016 was no longer available. Communications or interactions between citizens and employees of the Sheriff and/or the Sheriff or inquiries made by citizens about filing a complaint are not documented unless a complaint is filed.

In such situations, the complaint is organized by the name of the complainant, not time and date. As for the records retention policy, the Sheriff explained:

> The Hocking County Sheriff's Office Records Retention Schedule was reviewed, and approved, by the Hocking County Records Commission. The Records Commission Chair signed the Records Retention schedule on April 27, 2015. The Records Retention Schedule was signed by the Ohio Historical Society on April 30, 2015, and signed by the Auditor of State on May 14, 2015.

The Sheriff's Office Records Retention Schedule was included as an exhibit to the Sheriff's affidavit.

{¶11} The Sheriff argued that a writ of mandamus is not warranted because he did not violate the Ohio Public Records Act when he did not produce documents in response to Ogle's November 29, 2021 request. He argued that requests one, two, and seven through ten were overly broad and ambiguous and, because the records are not organized by date and time, the requests would require the Sheriff's Office to conduct "improper research" and create new files to accommodate Ogle's requests. Last, he contended that some of the records were not public records.

{¶12} The Sheriff argued that R.C. 149.43(B)(2) addresses ambiguous or overly broad requests and allows him to deny the request if he provides the requestor with an opportunity to revise the request by informing the requestor of the way the records are maintained and accessed in the ordinary course of the office's duty. The Sheriff also argued that Ogle's request required the Sheriff to search through records for selected information; but to be required to comply, the law requires that a compilation of the information requested must already exist. According to the Sheriff's affidavit, the records Ogle sought were not organized by date, but instead were organized by the name of the individual involved and by the location of the incident. To find documents by date,

thousands of documents would have to be reviewed to find interactions or incidents that occurred on those two dates.  Thus, because Ogle's request required the Sheriff to search through records to locate selected information or create new records by compiling information from existing records, the Sheriff argued that he appropriately denied the request.

{¶13}   The Sheriff also contended that some of the records Ogle requested were not public records. Ogle's eighth and ninth requests sought records of interactions and conversations between an employee of the Sheriff's office or the Sheriff and a citizen, none of which are documented. Likewise, persons who make inquiries into filing a complaint, but do not do so, are not documented. If a complaint is filed, then those records are organized by complainant name, not by date or time. Therefore, the Sheriff argued that the records sought in requests eight, nine, and ten do not exist and thus, cannot be produced.

{¶14}   The Sheriff argued that Ogle's third, fourth, fifth, sixth, and seventh requests sought documents that no longer exist because they were disposed of in accordance with a valid retention schedule. As to Ogle's allegation that the Sheriff violated a May 14, 2010 court order, the Sheriff recited the order's language and argued that the order pertained to all the relevant documents in Case No. 10CV0114 that were in the Sheriff's possession at the time the order was issued in 2010. A copy of this order was submitted with the Sheriff's affidavit.  Ogle's request pertained to records from September 2016 and none of the 2016 records would have been in the Sheriff's possession in 2010. As a result, the May 2010 order does not apply to this case. And, the Sheriff argued that Ogle relied on speculation in claiming that the Sheriff acted improperly.

**{¶15}** The Sheriff argued that he provided Ogle an opportunity to revise his requests. His December 9, 2021 letter informed Ogle that records were maintained by report numbers, names of involved parties, deputies involved, and/or address or area of incident and gave him the opportunity to revise his requests. Specifically, the Sheriff responded:

> If you would like to clarify this request with specifics, we will attempt to located [sic] the record which you are seeking. * * * it would appear that you are looking for public records related to a specific incident. If you would provide us with more information or description of the incident that you are inquiring about, it would help narrow down our search and assist us in locating and providing the records in which you are seeking * * * Some clarifying information would things [sic] such as report numbers, name(s) of involved parties, address or area of the incident, or deputies involved. If you would like to revise your request with additional clarifying information, we would be more than willing to attempt to fufil [sic] it, if the records still are in existence in accordance with our record retention policies.

The Sheriff argued that Ogle never revised his request and is therefore not entitled to mandamus relief.

**{¶16}** The trial court issued a notice advising Ogle and the Sheriff that the Sheriff's motion for summary judgment was set for a non-oral hearing on April 20, 2021. The order advised the parties, "If the parties want a chance to file a reply or want oral argument, they should file a written request immediately." Ogle did not request an oral argument or ask for an evidentiary hearing.

**{¶17}** Ogle opposed the summary judgment motion. He incorporated by reference his complaint, amended complaint, Ogle's November 29, 2021 request, and the Sheriff's December 9, 2021 response, but he did not include any affidavit testimony or other Civ. R. 56 evidence. Ogle argued that the Sheriff's statement that he informed Ogle the records were "maintained by report numbers, names of involved parties, deputies

involved and/or address or area of the incident" was not true because what the Sheriff actually stated was, "the requested information is not organized by date and time." Ogle also argued that the Sheriff never told him that he was "unable to produce any public records" for those requests the Sheriff identified as "overly broad and ambiguous" nor has the Sheriff said this in his affidavit. Ogle contended that what the Sheriff actually said in his December 9, 2021 response and what he is claiming he said in his "new and improved version" creates a genuine dispute as to the facts. Ogle argued that the Sheriff did not inform Ogle "of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties" in violation of R.C. 149.32(B)(2). Ogle noted that the Sheriff's record retention policy for some of the records was two years or three years, depending upon the record. Ogle asked how the Sheriff could purge records after two or three years, if he cannot readily access them by date. Ogle stated that it is not credible that the Sheriff cannot access the incident reports by date if he can purge those same incident reports by date. Ogle argued that these apparent incongruencies created a genuine issue of material fact which prevented summary judgment in the Sheriff's favor.

{¶18} Ogle also asked the court to impose an order on the Sheriff to maintain public records that could apply to cases involving the extended two-year statute of limitations for criminal acts involving a public servant as set forth in R.C. 2901.13(C)(1)(a). The remainder of his opposition memorandum focused on law enforcement misconduct in unrelated cases and in society more generally and concluded that "The National Registry of Exonerations is replete with cases reflecting how mountains must be moved

in order for a defendant's team to prove that a citizen has wrongfully convicted [sic] of a crime."

**{¶19}** The trial court granted the Sheriff's motion. The trial court recognized that the Ohio Public Records Act reflects "the state's policy that open government serves the public interest and the democratic system." As a result, R.C. 149.43 is to be liberally construed to broad access and doubt is resolved in favor of disclosure. The trial court stated that a writ of mandamus "will only be issued where there is a clear legal duty to act" on the part of the public office from whom the records are sought.  In addition, the requester "must be specific and particularly describe what it is that is being sought."

**{¶20}** Specifically addressing Ogle's requests, the trial court found that while Ogle used the phrase "any and all" for the type of records he sought in each of the ten record requests, each request was also limited to one date and "a short specific time frame of six to twelve hours but is not limited by the names of the parties or the issues involved." The trial court found this feature distinguished Ogle's requests from the cases the Sheriff cited which involved broad "any and all" requests without limiting to a single date and time. The trial court found, "it is anticipated that over a six or hour twelve [sic] time frame the number of documents would not be too excessive to expect the public agency in this case to comply."  The trial court found that the requests were broad but not overly broad "because each request is limited by a short time frame involved." The problem was not overbreadth, but that the records were not maintained in a manner that they could be located by time and date:  "If the records were maintained by date and time, this would not be a difficult matter to  comply with in terms of providing the requested records."

**{¶21}** The trial court stated that its finding that Ogle's request was broad but not overly broad was not determinative of the matter. Rather, even though the trial court thought it might be possible to maintain records by time and date, the Sheriff's affidavit states that he does not maintain the records by time and date. Instead, they are maintained by report number, the name of the individual encountered by law enforcement, and the address or area where a specific incident occurred. The trial court found that requiring the Sheriff to change its record maintenance to one that included time and date would require considerable expense and time and would require him to go through all records and reclassify them. Additionally, the trial court found that there was "no legal requirement that a county sheriff index his/her records by dates and times" and it "would have very little utility since reasonably most records will be requested and used by law enforcement, as well as by the public, based on reference to a particular incident which occurred, or a particular person who was involved and a location where an incident occurred." As a result, the trial court found that the Sheriff was complying with his duty to maintain records in a manner that they can be available for inspection or copying in accordance with R.C. 149.43(B).

**{¶22}** The trial court found that to locate documents by time and date as requested by Ogle, the Sheriff would have to create a new index of the documents by time and date so that they could be retrieved in that manner.

> The court finds that the Sheriff in this case does not maintain records indexed by date or time of day and that there is no legal requirement that he maintain an index by date and time of records in his office. Such an index would constitute a new record or type of record, and the Sheriff is not legally required to create a new index or record in order to comply with a public records request.

The trial court found that this reasoning applied to all ten of Ogle's record requests.

{¶23} As to Ogle's third through sixth requests (which the Sheriff denied because the records were purged in accordance with the records retention policy), the trial court found that these records are not available because they were outside the applicable retention schedules involved. "These records are no longer permanently retained by the Sheriff's office and are not subject to disclosure as public records pursuant to Section 149.43 of the Revised Code."

{¶24} In addressing Ogle's claim for statutory damages, the trial court stated that Ogle argued that he was entitled to statutory damages because he was not provided "an explanation, including legal authority, setting forth why the request was denied" under R.C. 149.43(B)(3). As to Ogle's third through sixth requests, the trial court found that the Sheriff explained that the documents were not available because they were purged under the document retention policy. The trial court found that while more detail could have been provided, the Sheriff's explanation met the legal requirement under R.C. 149.43(B)(3). As to the Sheriff's responses to Ogle's requests one, two, and seven through ten, the trial court found that the Sheriff failed in his December 9, 2021 letter to provide an adequate explanation for why the requests were denied. However, later, in his March 21, 2022 affidavit, the Sheriff provided an adequate explanation, explaining that the records were not organized by date and time, but by report numbers, the name of the individual the police encountered, and the address or area the incident occurred. The trial court found that the Sheriff's affidavit provided an adequate explanation and complied with R.C. 149.43(B)(3). Because R.C. 149.43(B)(3) does not impose a timeliness requirement, the Sheriff's March 21, 2022 affidavit satisfied his statutory obligation. The trial court found that Ogle was not entitled to statutory damages under R.C. 149.43(B).

**{¶25}** Ogle appealed.

## II. ASSIGNMENTS OF ERROR

**{¶26}** Ogle identifies six assignments of error for review:

I. The trial court erred in granting summary judgment to respondent-appellee when there is a genuine issue of material fact regarding respondent-appellee's asserted inability to access the requested records by a date and time search of his public records.

II. Respondent-appellee's summary judgment affidavit does not meet the requirements of Civ.R. 56(E), as the record contains contradictory evidence and submitted facts provided by respondent-appellee to the same.

III. The trial court erred in the subject public records mandamus case by failing to hold an evidentiary hearing when inconsistent facts/evidence were submitted by respondent-appellee, to that of respondent-appellee's public records request response and his summary judgment affidavit.

IV. The trial court erred in finding that, "The Sheriff is already complying with his duty to maintain records in a manner that they can be available for inspection or copying in accordance with division (B) of Section 149.43 of the Revised Code."

V. The trial court erred in finding that, "Relator Ogle is asking the Sheriff to create a new document[.]"

VI. The trial court erred in finding that, "Relator Ogle is not entitled to statu[t]ory damages" regarding "requests one, two, seven, eight, nine, and ten", wherein at the same time the trial court found that, "The Sheriff failed to provide an adequate explanation, including legal authority, setting forth why the request was denied" for those same requests.

### III. Review of Summary Judgment

#### A. Standard of Review & Mandamus Requirements

**{¶27}** We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12. Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate. *Harter v. Chillicothe Long–Term Care, Inc.*, 4th Dist. Ross No.

11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes,* 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 16.

{¶28} Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor. Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264 (1996). To meet its burden, the moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher* at 293, 662 N.E.2d 264. Moreover, the trial court may consider evidence not expressly mentioned in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Discover Bank v. Combs*, 4th Dist. Pickaway No. 11CA25, 2012-Ohio-3150, ¶ 17; *Wagner v. Young*, 4th Dist. Athens No. CA1435, 1990 WL 119247, *4 (Aug. 8, 1990). Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine

issue for trial. *Dresher* at 293, 662 N.E.2d 264; Civ.R. 56(E). *Am. Express Bank, FSB v. Olsman*, 2018-Ohio-481, 105 N.E.3d 369, ¶ 10-11 (4th Dist.).

**{¶29}** "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees,* 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1).

**{¶30}** Although the Ohio Public Records Act is accorded liberal construction in favor of access to public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence." *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office,* 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 16. Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. In addition, unlike in other mandamus cases, "[r]elators in public-records cases need not establish the lack of an adequate remedy in the ordinary course of law." *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer,* 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 25; *see also State ex rel. Pietrangelo v. Avon Lake*, 149 Ohio St.3d 273, 2016-Ohio-5725, 74 N.E.3d 419, ¶ 13-14.

B. Accessing Records by Date and Time

{¶31} For his first assignment of error, Ogle contends that there is a genuine issue of material fact as to whether the Sheriff could not access the requested records by date and time. He argues that the Sheriff's affidavit stated that the records were not organized by date and, to locate them by date, thousands of documents would have to be reviewed to locate the ones Ogle wants. Ogle asserts that the trial court "has apparently made presumptions regarding the form and way in which the requested documents are 'organized.'" (Emphasis sic.) Ogle quotes the trial court's decision in which the court found that the Sheriff "does not maintain records indexed by date or time of day" and argues that because the Sheriff's affidavit did not use the word "maintain" or "index" but only used the word "organize," the trial court made findings of fact that are found nowhere in the Sheriff's affidavit.

{¶32} We summarily reject this argument. The word "maintain" as used by the trial court is synonymous with the word "organized" as used in the Sheriff's affidavit. We have reviewed the trial court's decision and compared it with the Sheriff's affidavit, and we find no error in the way the trial court summarized the relevant facts.

{¶33} Ogle also argues that the Sheriff's affidavit is ambiguous, vague, and misleading when it states, "To locate a document by date, thousands of documents have to be reviewed to find interactions/incidences that occurred on a specific date." He contends that the Sheriff "has offered no evidence in support as to why he has an inability to search his complaints" by date. Ogle contends the trial court needed to hold an evidentiary hearing so that the Sheriff could offer evidence "in support as to why he has an inability to search his complaints" by date. He argues that an evidentiary hearing

"would have been efficient in meting out and resolving questions of fact" and the Sheriff's

"bare assertions regarding his asserted inability to access the requested records by time

and date * * * ."

**{¶34}** We have reviewed the Sheriff's affidavit and Ogle's memorandum contra

and we reject Ogle's arguments. The Sheriff's affidavit states, "Records, reports, logs,

images and recordings are not organized by date, but by report numbers, the name of the

individual the police encountered and the address or area the incident occurred. To locate

a document by a date, thousands of documents have to be reviewed to find interactions/

incidences that occurred on a specific date." Ogle did not submit any evidence in

accordance with Civ.R. 56(E) that contradicted the Sheriff's statement that his records

are not organized by date. Rather, Ogle made speculative arguments that he finds it "not

believable" that the Sheriff cannot access public records by date. "Mere speculation and

unsupported conclusory assertions are not sufficient to meet the nonmovant's reciprocal

burden under Civ.R. 56(E) to withstand summary judgment." *DeepRock Disposal Sols.,

LLC v. Forte Productions, LLC*, 4th Dist. Washington No. 20CA15, 2021-Ohio-1436, ¶ 82,

citing *Bank of New York Mellon v. Bobo*, 2015-Ohio-4601, 50 N.E.3d 229, ¶ 13 (4th Dist.).

**{¶35}** We overrule Ogle's first assignment of error.

### C. The Sheriff's Affidavit

**{¶36}** For his second assignment of error, Ogle contends that the Sheriff's affidavit

does not meet the requirements of Civ.R. 56(E). To the extent Ogle believes there was

an error in the affidavit, or that it was not based on personal knowledge, he has waived it

because he did not move to strike it in the trial court. *Nationstar Mtge. LLC v. Payne*,

2017-Ohio-513, 85 N.E.3d 249, ¶ 21 (10th Dist.) ("failure to timely move to strike or

otherwise object to non–Civ.R. 56(C) evidence waives any error arising from the trial court's consideration of that evidence"); *Davila v. Simpson*, 2018-Ohio-946, 108 N.E.3d 628, ¶ 26 (5th Dist.) ("Failure to object to the court's consideration of the evidence submitted in support of a motion for summary judgment constitutes waiver of any alleged error in the consideration of the evidence.").

**{¶37}** Ogle's criticism of the affidavit is that it is not sufficiently clear enough; it does not contain enough facts. He asks, "What does 'organize' entail?" Ogle argues that the affidavit does not fully explain what type of records are not organized by date. He asks whether it is both "paper" records and "electronic" records. Ogle argues there is confusion and vagueness because the Sheriff's affidavit did not provide a detailed account of the recordkeeping and whether there are both paper and electronic files, whether they are arranged alphabetically, and how are they arranged.

**{¶38}** Again, the Sheriff's affidavit contained a straightforward explanation concerning record organization. The relevant part, which we have quoted before is:

> Records, reports, logs, images and recordings are not organized by date, but by report numbers, the name of the individual the police encountered and the address or area the incident occurred. To locate a document by a date, thousands of documents have to be reviewed to find interactions/ incidences that occurred on a specific date.

Ogle's record requests asked for records based on a date (September 16 or 17, 2016) and a time frame (noon to midnight or 6:00 a.m. to 6:00 p.m.). The Sheriff's explanation is that the records are not arranged by date and time but by report number, name of individual, and area/address. The affidavit contained sufficient facts for the trial court to conclude that there is no genuine issue of material fact and the records Ogle sought were not organized by date and time.

**{¶39}** We overrule Ogle's second assignment of error.

## C. No Evidentiary Hearing

**{¶40}** For his third assignment of error, Ogle argues that the trial court should have held an evidentiary hearing to conduct an "in-depth direct inquiry" of the Sheriff's "assertions that he cannot access his records * * * by way of searching with an incident date" and "he could explain what 'organize' in regard to his record entails." Ogle does not believe that the Sheriff cannot search records by date and he argues that he is entitled to a full understanding of how the Sheriff implements the record retention policy.

**{¶41}** None of the issues Ogle wants to explore at an evidentiary hearing are material to the question before the trial court. The relevant question was whether the Sheriff should be compelled to produce records in response to Ogle's requests. The Sheriff's affidavit explained that he could not respond because the only identifier Ogle provided was a date and time and the Sheriff could not locate these records without reviewing thousands of documents because the records were not organized by date. As we explained in rejecting Ogle's first assignment of error, Ogle provided no evidence under Civ.R. 56(E) to refute the Sheriff's affidavit or to establish by clear and convincing evidence a right to the records. Therefore, a hearing to explore immaterial factual issues or indulge Ogle's speculations was unwarranted. The trial court did not err in ruling on the matter based on the evidence before it.

**{¶42}** We overrule Ogle's third assignment of error.

## D. Trial Court's Finding that the Sheriff Complied with Duty to Maintain Records

**{¶43}** Ogle argued in his memorandum contra that the Sheriff had failed to fulfill his duties under R.C. 149.43(B)(2) because the Sheriff's response failed to inform Ogle

how the Sheriff maintains public records. In addressing Ogle's argument, the trial court outlined the duties imposed by R.C. 149.43(B)(2), which provides in part: "To facilitate broader access to public records, a public office or the person responsible for public records shall organize and maintain public records in a manner that they can be made available for inspection or copying in accordance with division (B) of this section." The trial court found the Sheriff was the person responsible for public records in the Sheriff's office and was required to maintain them in a manner so that the public can inspect and copy them. It found that if the Sheriff's records were organized by date and time, Ogle's requests would not be difficult to comply with in terms of providing the requested records. However, the trial court found that the language in R.C. 149.43(B)(2) did not require the Sheriff to maintain records by time and date; his organization by report number, name of individual involved, and address or area was sufficient to comply with his duty to organize and maintain public records. The trial court found, "The Sheriff is already complying with this duty to maintain records in a manner that they can be available for inspection or copying in accordance with division (B) of Section 149.43 of the Revised Code."

{¶44} Ogle contends that the trial court's finding that the Sheriff is complying with his duty to maintain public records was not at issue and was used to justify the trial court's subsequent finding that the Sheriff would have to create an index or recategorize his records to be able to easily access them by date.

{¶45} We find nothing erroneous about the trial court's analysis. It worked through the statutory language in a methodical manner to analyze the relevant issues.  The trial court found that the Sheriff is the person responsible for maintaining the public records of his office and that he is maintaining the records in accordance with his duties under R.C.

149.43(B)(2). These findings are supported by the record and were not used to justify its finding that Ogle's requests required the Sheriff to create an index or recategorize records. If, as Ogle argues, "there was no issue before the trial court as to whether or not 'The Sheriff [was] already complying with this duty,' " then it was, at most, dicta which had no prejudicial effect on Ogle's claims and is not subject to reversal.

> As dicta, that comment by the trial court is not considered necessary to the decision in the case.
>
>> Stated differently, dicta or dictum is an observation or statement in an opinion by the writing judge—* * *—which is unnecessary to resolution of the issues in the case * * *." Black's Law Dictionary 1102 (8th Ed.2004) ("a judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential."); *see also Duck v. Cantoni*, 4th Dist. No. 11CA20, 2012-Ohio-351 [2013 WL 440699], ¶ 25.
>
> *Peters v. Tipton*, 7th Dist. Harrison No. 13 HA 10, 2015-Ohio-3307, 2015 WL 4899641, ¶ 6.
>
> Consequently, if we accept the appellant's characterization of the trial court's observation as dicta, that comment does not state the holding of the trial court and is not subject to reversal. (Brackets sic.)

*Davila v. Simpson*, 2018-Ohio-946, 108 N.E.3d 628, ¶ 43-44 (5th Dist.).

**{¶46}** We overrule Ogle's fourth assignment of error.

 E. The Trial Court's Finding that Ogle Is Asking the Sheriff to Create a New Document

**{¶47}** The Sheriff argued in his motion for summary judgment that the requests sought information that required improper research and/or the creation of new records. The Sheriff cited to case law that holds that a public office is not required to search through records to find ones that contain selected information. *E.g., State ex rel. Thomas v. Ohio State Univ.*, 70 Ohio St.3d 1438, 638 N.E.2d 1041 (1994); *State ex rel. Beacon Journal Publishing Co. v. Bodiker*, 134 Ohio App.3d 415, 421, 731 N.E.2d 245, 250 (10th

Dist.1999). He argued, "A request asks for an 'improper search' if it requires the public office to either search through voluminous documents for those that contain certain information or to create new documents by searching for and compiling information for existing records." *See e.g., State ex rel. Carr v. London Corr. Inst.,* 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, ¶ 22 (" to constitute improper research, a record request must require the government agency to either search through voluminous documents for those that contain certain information or to create a new document by searching for and compiling information from existing records"); *State ex rel. Morgan v. New Lexington,* 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 30–31, 35*; State ex rel. Kerner v. State Teachers Retirement Bd*., 82 Ohio St.3d 273, 274, 695 N.E.2d 256 (1998).

**{¶48}** The trial court addressed the Sheriff's argument and agreed that Ogle's requests would require the Sheriff to undertake considerable expense and effort and create a new document. "In essence, for each request, the Relator Ogle is asking the Sheriff to create a new document, which would contain a list of all of the documents of a particular type which were filed within a given time frame. The Sheriff does not maintain any such index of records by date, nor does he have an obligation to create such a record or index just to comply with the Relator Ogle's requests." The trial court found that, even though Ogle's records requests were not "overly broad," they were improper on this other ground.

**{¶49}** We find no error in the trial court's reasoning; it is supported by the record. The Sheriff explained in his affidavit that records, reports, logs, images, and recordings were not organized by date. Rather, it is all organized by report number, name of

individual involved, and area/address of incident. The Sheriff stated that he would have to search thousands of records to locate the information Ogle sought. The trial court determined that to do so by date would require the indexing or sorting of thousands of documents by date, which is in essence the creation or compilation of information indexed by date. Even if the act of sorting through thousands of documents is not the literal equivalent of creating an index, any error in the trial court's characterization is harmless. Ogle submitted no evidence to the trial court that would refute or conflict with the Sheriff's affidavit or the trial court's findings.

{¶50}  We overrule Ogle's fifth assignment or error.

## F. Statutory Damages

{¶51}  In his amended complaint, Ogle sought statutory damages under R.C. 149.43(B) and alleged that the Sheriff "failed to provide the requester with an explanation, including legal authority, setting forth why the requests were denied."  Ogle also alleged that in the denial letter, the Sheriff failed to inform him "of any other manner in which the records are maintained." In his memorandum contra to the Sheriff's summary judgment motion, Ogle argued that the Sheriff "has not shown this Court that he actually 'informed' Relator 'of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or persons duties as required by ORC 149.32(B)(2) [sic][2].' "

{¶52}  R.C. 149.43(B) contains three relevant provisions. Under (B)(1), if a proper public records request is made, the public office must either make them available for inspection "promptly" or "shall make copies of the requested public record available to the

---

[2] Although Ogle cited the incorrect statutory provision, he correctly quoted R.C. 149.43(B)(2).

requester at cost and within a reasonable period of time." Thus, R.C. 149.43(B)(1) imposes timeliness obligations on the public office. Conversely, R.C. 149.43(B)(2) and (B)(3) do not contain timeliness obligations. If a records request is improper under R.C. 149.43(B)(2), "the person responsible for the requested public record may deny the request but shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties." There is no requirement that the person responsible do so "within a reasonable period of time" or "promptly." Likewise, under R.C. 149.43(B)(3), if a request is denied, "the person responsible for the requested public record shall provide the requester with an explanation, including legal authority, setting forth why the request was denied." Again, there is no requirement that this explanation be made "promptly" or "within a reasonable time."

{¶53} The trial court found that the Sheriff properly denied Ogle's requests under R.C. 149.43(B)(3), not (B)(2). In fact, the trial court found that the problem with Ogle's requests were not that they were overly broad or ambiguous under R.C. 149.43(B)(2) – "If records were maintained by date and time, this would not be a difficult matter." Instead, the Sheriff was not required to respond to the requests under R.C. 149.43(B)(3) because they either fell outside the applicable record retention period or because, in order to respond to them, the Sheriff would be required to engaged in the research of thousands of documents to locate and/or index them by date. Thus, in analyzing Ogle's claim for statutory damages, the trial court focused exclusively on R.C. 149.43(B)(3) and analyzed

whether in denying the requests the Sheriff "failed to provide an adequate explanation, including legal authority, setting forth why the request was denied."

**{¶54}** The trial court found that the Sheriff's December 9, 2021 response explaining that certain requests fell outside the record retention policy "could have been explained in more detail" but nevertheless "meets the requirements that the Sheriff provide an explanation, including legal authority, setting forth why the request was denied." However, the trial court found that with respect to the remaining requests, "the Sheriff failed to provide an adequate explanation, including legal authority, setting forth why the request was denied. However, the trial found that even though the Sheriff's December 9, 2021 response failed to provide an adequate explanation, the Sheriff's subsequent affidavit, filed March 21, 2022 did provide an adequate explanation. The trial court quoted from the relevant portion of the affidavit that it found provided the explanation.

**{¶55}** The trial court held that because this is not a case where records were provided under R.C. 149.43(B)(1), the timeliness requirements under that subsection were not applicable. Instead, the court noted that R.C. 149.43(B)(3) does not impose a timeliness requirement. Therefore, the court found that the Sheriff's affidavit provided an adequate explanation and Ogle was not entitled to statutory damages, citing *State ex rel. Ware v. Kurt*, __ Ohio St.3d ___, 2022-Ohio-1627, ¶ 24-26.

**{¶56}** In *Ware*, the Court found that Ware, who was seeking public records, was not entitled to receive the documents under R.C. 149.43(B)(3), which does not impose a timeliness requirement. Therefore, the Court did not need to determine whether the public office acted within a reasonable time.

> Unlike R.C. 149.43(B), which requires public records to be "promptly prepared" and made available "within a reasonable period of time" upon request, R.C. 149.43(B)(3) does not impose a timeliness requirement. See *State ex rel. Ware v. Giavasis*, 160 Ohio St.3d 383, 2020-Ohio-3700, 157 N.E.3d 710, ¶ 11-12. Accordingly, we affirm the court of appeals' determination that Ware is not entitled to statutory damages under R.C. 149.43(C) * * *.

*Ware* at ¶ 26.

{¶57} The trial court properly denied Ogle's claim for statutory damages. The Sheriff's response coupled with his affidavit provided an adequate explanation and complied with R.C. 149.43(B)(3).

{¶58} We overrule Ogle's sixth assignment of error.

IV. CONCLUSION

{¶59} We overrule Ogle's assignments of error and sustain the trial court's judgment.

JUDGMENT AFFIRMED.

## __JUDGMENT ENTRY__

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
        Michael D. Hess, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**