[Cite as *State v. Pierce*, 2024-Ohio-82.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 22CA4002 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| TAYLOR L. PIERCE, | : | |
| Defendant-Appellant. | : | **RELEASED 1/8/2024** |

_____
APPEARANCES:

Adam J. Banks, Amlin, Ohio, for appellant.

Shane A. Tieman, Scioto County Prosecutor, and Jay Willis, Scioto County Assistant Prosecutor, for appellee.
_____
Hess, J.

**{¶1}** Taylor L. Pierce appeals her conviction for aggravated drug trafficking, a first-degree felony after she entered a no contest plea. Pierce challenges her sentence of 8 to 12 years in prison. She contends that, although the sentence is within the statutory range, it is invalid because it is clearly and convincingly contrary to law and the trial court abused its discretion in imposing it. She also contends that her no contest plea was not knowingly, intelligently, and voluntarily entered because she was coerced into it by her trial counsel, and she was confused at the change of plea hearing and experiencing a headache caused by a prescription narcotic she had taken. She contends that the trial court erred in denying her request to withdraw her no contest plea before sentencing and in finding that her motion was not supported by evidence. Finally, she contends that she received ineffective assistance of counsel. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

**{¶2}** The Scioto County grand jury indicted Pierce on a first-degree felony count of aggravated drug trafficking and a first-degree felony count of aggravated drug possession, both counts included major drug offender specifications. The indictment also included a count for tampering with evidence, a third-degree felony, two counts of failure to comply with an order or signal of a police officer, and a count for possession of marijuana. Pierce filed a motion to suppress. Prior to the commencement of the suppression hearing, the parties negotiated a plea agreement by which Pierce would plead no contest to count one, drug trafficking, without the major drug offender specifications, the remaining counts would be dismissed, and the parties would argue sentencing. At the change of plea hearing, the state argued that the evidence would show that Pierce was driving a rental car, which crossed over the fog lines three different times. When the state trooper signaled her to stop and pull over, Pierce refused to comply, but instead continued to drive for four miles before finally pulling over. As a result, Pierce was immediately handcuffed and advised of her Miranda rights as soon as she exited the vehicle. Pierce told the trooper that she did not stop because she had a child in the car who needed medical attention and was unresponsive. The trooper located and removed the eight-year-old child from the back seat of the vehicle and saw that the child was not panicked, crying, or unresponsive. They placed the child in the back seat of the cruiser with Pierce's passenger and codefendant, who was the child's father. A pat down of Pierce revealed that she had a baggie of marijuana in the front of her pants and a baggie of methamphetamine in the back of her pants. Upon finding those drugs, the troopers

searched the vehicle and discovered what was later analyzed to be over 2,221 grams of methamphetamine.

{¶3}    The trial court accepted the plea and the suppression hearing did not go forward. Three weeks later, Pierce filed a motion to withdraw plea, a motion to make the presentence investigation (PSI) report part of the court record, and a motion to withdraw counsel, after which Pierce obtained new counsel. The state filed an objection to the motion to withdraw the plea. The trial court granted counsel's motion to withdraw as trial counsel, revoked bond, and continued any decision on her motion to withdraw her plea and her motion to make the PSI report part of the court record pending Pierce's retention of new trial counsel. Pierce's new trial counsel filed a supplemental memorandum in support of her motion to withdraw her plea and asked that bond be reinstated. The trial court denied Pierce's motion to withdraw her plea and sentenced her to a mandatory minimum 8-year prison term to an indefinite maximum term of 12 years. She was also ordered to pay a mandatory drug fine of $20,000.   Pierce filed a motion for reconsideration, which the trial court denied. The trial court entered a nunc pro tunc judgment entry removing the language describing the sentence as a joint recommendation and agreement.  Pierce appealed.

## II.  ASSIGNMENTS OF ERROR

{¶4}    Pierce presents five assignments of error:

1.  The trial court erred in sentencing the Defendant.

2.  The trial court erred in accepting Defendant Pierce's plea as it was not knowingly, voluntarily, and freely entered.

3.  The trial court erred in denying Defendant's request to withdraw her plea before sentencing.

4.  The Defendant was denied effective assistance of counsel such that she is entitled to a reversal of her conviction and withdrawal of her plea.

5.  The court erred in finding Defendant's motion to withdraw her plea not supported by evidence.

**{¶5}** We address the assignments of error out of order.

### III.  LAW AND ANALYSIS

### A.  Pierce's No Contest Plea

**{¶6}** In her second assignment of error, Pierce contends that her plea was not made knowingly, intelligently, and voluntarily. Pierce contends that her plea of no contest was the result of coercion by her trial counsel and because she was confused at the change of plea hearing and experiencing a headache caused by a prescription narcotic she had taken. She argues that she was "threatened and coerced into believing she would not receive a fair trial," that she was "clearly confused," "believed she was going to jail that day," and said that "she did not understand and that she was lost."

**{¶7}** She argues that her trial counsel's coercion was known to the trial court because counsel's statements were made on the record and the trial court should have made further inquiries. She also contends that after she told the trial court she was on a narcotic prescribed by a doctor and had a headache, the trial court did not ask any follow-up questions. Because the trial court did not ask follow-up questions on the narcotic, she argues that it erred in determining that her plea was entered knowingly and voluntarily.

### 1.  Standard of Review

**{¶8}** We conduct a de novo review of the record to determine whether the plea was made knowingly, intelligently, and voluntarily:

> "An appellate court determining whether a guilty plea was entered knowingly, intelligently, and voluntarily conducts a de novo review of the record to ensure that the trial court complied with the constitutional and procedural safeguards." *State v. Moore,* 4th Dist. Adams No. 13CA965, 2014-Ohio-3024, ¶ 13.

*State v. Leonhart*, 4th Dist. Washington No. 13CA38, 2014-Ohio-5601, ¶ 36.

### 2. Pierce's Plea Was Made Knowingly, Intelligently, and Voluntarily

**{¶9}** "Because a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 10. If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional. *Parke v. Raley*, 506 U.S. 20, 28-29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992).

**{¶10}** Crim.R. 11 outlines the procedures that trial courts are to follow when accepting pleas to provide "an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made." *Dangler* at ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975). Our focus on review is not on whether the trial court recited the exact language of Crim.R. 11, but "on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences" of the plea. *Id.* at ¶ 12; *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 15-16. A criminal defendant must establish that

an error occurred and that it was prejudicial. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14-15.

**{¶11}** If the trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, it is presumed that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required. *Dangler* at ¶ 14. These constitutional rights are those set forth in Crim.R. 11(C)(2)(c): the right to a jury trial, the right to confront one's accusers, the privilege against self-incrimination, the right to compulsory process to obtain witnesses, and the right to require the state to prove guilt beyond a reasonable doubt. *Veney* at ¶ 19. If a trial court fails to fully cover other "nonconstitutional" aspects of the plea colloquy, a defendant must affirmatively show prejudice to invalidate a plea. *Id.* at ¶ 17.

**{¶12}** Additionally, if a trial court completely fails to comply with a portion of Crim.R. 11(C), the defendant need not show prejudice. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22 (the trial court's complete failure to comply with Crim.R. 11(C)(2)(a)'s requirement that it explain the maximum penalty, despite the fact the defendant was subject to a mandatory five years of postrelease control, relieved the defendant of the burden to show prejudice).

**{¶13}** If neither of these two exceptions apply, then the defendant is not entitled to have the plea vacated without demonstrating prejudice. The test for prejudice is "whether the plea would have otherwise been made." *Dangler* at ¶ 16, quoting *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

> Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that

excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Dangler* at ¶ 17.

**{¶14}** The record shows that the trial court properly complied with Crim.R. 11 in explaining the constitutional rights she was waiving by entering a no contest plea and Pierce does not contend otherwise. It is also clear from the record that the trial court explained the charges, maximum penalties involved, postrelease control, and indefinite sentencing and that Pierce stated that she understood them. Pierce repeatedly stated that she understood the trial court's explanations and that she had no questions. The trial court asked Pierce if she understood the plea agreement and she stated, "Yes, Judge." In addition, Pierce signed a written waiver form in which she acknowledged that she understood the constitutional rights she was waiving and desired to enter a no contest plea. The written waiver also included a statement Pierce signed which states, "No promises, threats or inducements have been made to me by anyone to secure my plea of no contest." The trial court asked Pierce if she was voluntarily entering a no contest plea and she stated that she was:

> THE COURT: Okay. Other than what we've discussed here on the record, has anyone promised you anything, or threatened you, or otherwise caused you or induced you to come in here and change your plea from not guilty to no contest on this charge?
>
> DEFENDANT: No.
>
> THE COURT: Are you doing this of your own freewill?
>
> DEFENDANT: Yes, I am.

**{¶15}** Contrary to Pierce's assertions, there was no evidence that she was bullied or threatened into entering the no contest plea. Rather, Pierce was indecisive and may

have been receiving different advice from different family members who were present.  At the beginning, prior to the start of the suppression hearing, the trial court asked Pierce if she had any interest in engaging in plea negotiations. To which Pierce made two inaudible remarks and then stated, "Can we take a second? Yes. Can we like take a second?"  The court recessed, the parties engaged in plea negotiations, and then court resumed. Pierce's attorney explained that Pierce had her mother and grandmother in the courtroom with her and that "it's just a very, very, very tough thing." Pierce's attorney explained that he covered this scenario with her the day before and explained to her "the world will stop. She's going to have to make a decision and that - - now she's got her mom and grandma here * * * there may be some difference of opinion among the family on what's going on, you know." The trial court asked Pierce if she was accepting the state's offer and she responded, "I'm rejecting it."  The trial court asked the state if it wished to leave the offer open or withdraw it. The state responded by stating that if Pierce went to trial and were found guilty, "she's looking at 15 and a half years, with an additional five and a half, I believe, indefinite term on that - - on Count 1 or 2. * * * And that we will not negotiate a plea after the suppression hearing begins."

{¶16} After she initially rejected the state's offer, Pierce contends that her trial counsel told her the bond could be revoked and she could be remanded to the sheriff's custody. She argues that this advice was "clearly incorrect and false" and "the record does not reflect any such conversation between" the trial court and her trial counsel. However, the court recessed so that the prosecutor and Pierce could engage in plea negotiations. Their discussions are not part of the record. Considering the state's subsequent request to revoke bond and the court's grant of it, trial counsel's cautionary

statement does not appear to be a falsehood invented to pressure Pierce. Pierce also contends that her trial counsel told her she was going "upriver because of her skin tone." However, Pierce's trial counsel made no statements about Pierce's skin tone or race at the change of plea hearing. Instead, his comments were vague, and he expressed general skepticism about going to trial "for a lot of obvious reasons," whether she would "get a fair trial," and "the makeup of the jury." Therefore, despite Pierce's argument that her counsel told her that she would not receive a fair trial due to her race, there are no such statements on the record. We reject Pierce's contention that the trial court had an obligation to explain to Pierce "that race would not affect the trial," as there was nothing said at the hearing that would prompt the trial court to discuss Pierce's race with her.

**{¶17}** After the state indicated it would not leave the offer open, the trial court asked Pierce if she understood the sentences she faced if convicted and that the state's offer would not remain open. After Pierce stated she did understand it, her trial counsel explained to her that he was recommending she take the offer, but "as your lawyer, I tried to stay out of it as much as I could for a recommendation * * * I care about you and I care about your family here, but 11 years and all these other years, I'm recommending take the State's offer, F1, every other case is thrown out. * * * I'm telling you, you do what you want. I'm recommending you take the offer right now. * * * It's up to you now. I've done the best that I can possibly on your behalf. I'm just not that big a gambler that you might, you know, be for you."

**{¶18}** Pierce then asked the trial court for additional time. The trial court granted her additional time to talk to her mother and grandmother who were in the back of the courtroom. After she returned, the trial court asked her what her decision was with respect

to the state's offer. Pierce asks the trial court if she would have to go to jail today if she took the offer or if she would have to go to jail today if she didn't take the offer. The trial court explained that she would not be going to jail, but that they would likely have a trial the following Monday. Pierce then expressed some exasperation, "Oh, Jesus. And then if I take the deal - - I'm sorry, I'm just – I've never been through this a day in my life." The trial court explained the plea deal and the sentencing process, explaining to her that the sentencing hearing would be held by the end of the month. Pierce acknowledges with "um hmm" several times and then asks about prison and whether she will be required to go to prison under either scenario:

> THE COURT: Ms. Pierce, any other questions for me?
>
> DEFENDANT: So, I will still - - my - - my only issue is the - - the going to prison thing. * * * That's  - - I wouldn't - - I wouldn't have never wanted to take it to trial if I was going to prison. I just - -  there's - - that's - -
>
> THE COURT: Well, for these types of charges if you're convicted of these charges or what the state's offering, or even one of the  - - even a lesser amount - - somewhat lesser amount of methamphetamine, it's mandatory prison. So, there's no discretion on my part. If you accept the state's offer it - - it would be the mandatory minimum is three. If you don't accept it and you're convicted as charged, then the mandatory minimum is 11.
>
> DEFENDANT: And it's just the F - - F1 or is the other charges with the F1?
>
> > *         *         *
>
> THE COURT: Yeah. They said that they want you to plead guilty to the - - felony one trafficking without the major drug offender and they're going to dismiss the rest of the charges when you come back for sentencing.
>
> THE DEFENDANT: I would have to – trafficking. Oh, my God. This is so hard for me to make. I'm sorry you guys.
>
> THE COURT: I need your answer, ma'am.
>
> DEFENDANT: I don't know. I don't - - -

**{¶18}** Trial counsel then explained that "we had a conference yesterday. We talked and I tried to prepare her for this exact moment. At some point you're going to have to make up your mind and if next Tuesday or Wednesday is not so good, you can't go back to it, and you know."

> THE COURT: Ms. Pierce, I – I don't care what you do, but I - - it's all the same to me. I - - you take it or don't take it. Either way, we have trials here. That's why we - - why we have trials.
>
> DEFENDANT: But then it's like (inaudible).
>
> THE COURT: But we do a lot of guilty pleas too. And something [sic] there's a benefit in doing that. But I need your answer.
>
> DEFENDANT: It's like I'm - - oh, my God. I'm sorry, but this – like I'm not – my side of the story is just not getting heard. It's just not. It's like regardless if I take it or I don't it's - - it's not - - this just isn't fair.

Pierce's trial counsel explained that if she accepts the plea deal she will have an opportunity to explain her side to the probation department, which will compile a PSI report and the judge will have the report when he decides the sentencing range. She will have her story out there and in return have the higher end of the sentencing "thrown out." Pierce then asks why the state did not make several offers for her to choose among:

> DEFENDANT: By why is it the only option – other plea deal. Like, I don't understand.
>
> MR. O'BRIEN: Say what?
>
> DEFENDANT: I said why isn't there an option to plead different? Why – this is like the only deal that I ever got - - that we've gotten.
>
> MR. O'BRIEN: That's their plea deal. That's it, you know. That's - - don't ask me, that's them. I mean, you don't like the plea deal, that's their plea deal. It's up to them to make a plea deal and it's up to you to say yes or no. All right. And if you don't like the plea deal you're staying in at - - you're still playing with 11 years.
>
> DEFENDANT: (Inaudible).

THE COURT: Ms. Pierce, I need your answer.

DEFENDANT: Okay.

MR. O'BRIEN: I'd take the best I could today and then let's start getting it down farther and farther. That's my recommendation. It's your life.

DEFENDANT: Okay. Well, I'll take the offer.

MR. O'BRIEN: No contest, everything else thrown out?

DEFENDANT: Yes.

MR. O'BRIEN: Okay.

**{¶19}** The record shows that Pierce was very indecisive and could not make up her mind about whether she wanted to accept the plea offer or go to trial. She appears to have wanted a third option that included no prison term, but the trial court explained that under either scenario, she would be required to serve a prison term. Based on statements made by her trial counsel, input from family members may have complicated her decision-making process. Regardless of the source of her indecisiveness, the trial court eventually instructed Pierce to make up her mind so that a suppression hearing could move forward if necessary. Although Pierce was a very indecisive individual, there is no evidence that she was bullied or threatened by her trial counsel to accept the plea offer. The record reflects that he was a patient lawyer advising an indecisive client. And Pierce stated that she was satisfied with his legal representation:

THE COURT: Now, you've retained Mr. O'Brien to represent you in this matter, are you satisfied with his representation?

DEFENDANT: Yes.

**{¶20}** Pierce also contends that her plea was not knowing, intelligent, and voluntary because she had admitted that she had taken a prescription medication, and

the trial court did not make any further inquiries. More than halfway through the hearing, after the trial court had the opportunity to observe Pierce's behavior and responses throughout it, the trial court asked Pierce about drug and alcohol use:

> THE COURT: All right. Now ma'am, before I accept these I have some additional questions for you. Have you used any drugs or alcohol in the last 24 hours?
>
> DEFENDANT: No, just all my medication.
>
> THE COURT: All right. The medication you take, is that any kind of narcotic?
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: All right. As you - - have you been taking your medication as directed by the doctor?
>
> DEFENDANT: Yes.
>
> THE COURT: All right. And as you sit here today are you clearheaded and understand what you're doing?
>
> DEFENDANT: Minus the headache, yes.
>
> THE COURT: Pardon?
>
> DEFENDANT: I have a headache, but I'm clear minded.

**{¶21}** Pierce does not argue that she was mentally incapacitated or confused by her medication. Rather, she argues that because the trial court "did not ask any follow up questions," it erred in determining that she entered the plea knowingly, intelligently, and voluntarily. However, the trial court did ask her follow up questions about her medication and determined that she was taking a prescribed medication, that she was taking it in accordance with the doctor's instructions, and that she was clearheaded and understood what she was doing. The trial court also had an opportunity to observe her mannerisms

and converse with Pierce a great deal during the hearing prior to asking her about her drug and alcohol use.

**{¶22}** Our de novo review of the record establishes that the trial court complied with the constitutional and procedural safeguards in Crim.R. 11 to ensure that Pierce's plea was knowingly, intelligently, and voluntarily entered. The record shows that Pierce was aware of the nature of the charge and the effect of her no contest plea. She was not bullied or threatened into accepting the plea, nor was she mentally incapacitated or confused by medication. Because we find no error in the change of plea hearing, we overrule Pierce's second assignment of error.

### B. Ineffective Assistance of Counsel

**{¶23}** For her fourth assignment of error, Pierce contends that she was denied effective assistance of counsel because her attorney (1) bullied and threatened her to enter the no contest plea, (2) filed a motion to make the PSI report part of the record, and (3) failed to show her the police video of her traffic stop. We have already determined that her attorney did not bully or threaten her into her plea. We summarily reject that as grounds for an ineffective assistance of counsel claim here. Pierce contends that by filing a motion to make the PSI report part of the record, trial counsel "knowingly volunteered all statements made by Defendant Pierce to the Court and the State." She argues that the information contained in the PSI report became known to the trial court at the time it considered her motion to withdraw her plea and it was used by the trial court against her and as the basis on which to deny her motion. She argues that had her attorney not filed a motion to make the PSI part of the record, "it is logical and reasonable to believe that the Court would not have considered said alleged statements at the aforementioned

hearing and the outcome would have been different."  She also contends that her trial counsel did not share the state's video of the traffic stop with her and that this constituted "a miscarriage of justice."

### 1.  Standard of Review

**{¶24}**  To prevail on an ineffective assistance claim, a defendant must show: "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Failure to satisfy either part of the test is fatal to the claim. *See Strickland* at 697. The defendant "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.E. 83 (1955); *State v. Bailey*, 4th Dist. Lawrence No. 22CA10, 2023-Ohio-2919, ¶ 10.

### 2.  Legal Analysis

**{¶25}** The record does not support Pierce's argument concerning the PSI report. First, the trial court ordered the PSI report at the change of plea hearing on July 7, 2022. The PSI report was ordered after the state presented its statement of facts and submitted photographic and lab evidence and the trial court found Pierce guilty of aggravated trafficking in drugs. Following the state's presentation, the trial court ordered the PSI report. When the court ordered the PSI report, it instructed Pierce to be cooperative in preparing the PSI report and to "thoroughly fill out that packet of documents" because that would give the court information it would consider. Pierce's attorney assured the court that Pierce would be cooperative with the PSI investigation, "we'll tell you a lot on the probation report and we know you're going to read it."

**{¶26}** The record shows that Pierce's counsel believed the information that Pierce would provide to the trial court through the PSI report would be favorable to Pierce and would help him argue for a lower sentence. Earlier in the hearing he advises Pierce that she will be able to tell her side of the story in the PSI report, and the judge would review it and Pierce's attorney would use it to get Pierce the "least sentence you can."

**{¶27}** After the trial court ordered the PSI report on July 7, 2022, three weeks later on July 27, 2022 – two days before the July 29, 2022 sentencing hearing date, Pierce's attorney filed the motion to make the PSI report part of the record, along with the motion to withdraw the no contest plea and his own motion to withdraw as trial counsel. On July 29, 2022, a hearing was held but the sentencing was postponed because of the pending motions. The trial court addressed Pierce's counsel's motion to withdraw as counsel and granted it. The trial court continued the sentencing hearing, the motion to withdraw plea,

and the motion to make the PSI report part of the record until Pierce could retain substitute counsel.

**{¶28}** On August 9, 2022, substitute counsel made a notice of appearance. Pierce's substitute counsel did not address the pending motion to make the PSI report part of the record, nor did he seek to withdraw that motion. The trial court held a hearing on the motion to withdraw plea and denied it, but the motion to make the PSI report part of the record was not addressed at the hearing, nor was it addressed in a subsequent court order.

**{¶29}** "[W]hen a trial court fails to rule on a motion, it is considered denied." *Spencer v. Blankenship*, 4th Dist. Scioto No. 03CA2882, 2004-Ohio-1738, ¶ 15, citing *State v. Olah*, 146 Ohio App.3d 586, 592, 2001–Ohio–1641, 767 N.E.2d 755 (9th Dist.). There is nothing in the record addressing the motion to make the PSI report part of the record and therefore we consider it denied. Thus, even if we assume that filing the motion constituted deficient performance by counsel, because the trial court denied the motion, Pierce cannot show she was prejudiced. Additionally, the record shows that the trial court ordered the PSI report weeks before trial counsel moved to have the PSI report made part of the record. There is nothing in the record that supports Pierce's speculation that the trial court would not have reviewed the PSI report but for trial counsel's motion. Finally, we do not find that filing a motion to make a PSI report part of the record to be deficient performance on the part of trial counsel. The PSI report was already part of the trial court's record and was relevant to the sentencing determination. *See State v. Gwynne*, ___Ohio St.3d___, 2023-Ohio-3851, __N.E.3d__, ¶ 37-43 (Fischer, J. concurring). In fact, the

failure to ensure that a PSI report makes it into the appellate record can be fatal to appellate review of sentencing issues. *Id.* at ¶ 38.[1]

**{¶30}** We reject Pierce's argument that her trial counsel was deficient for filing a motion to make the PSI report part of the record. It was not deficient performance to file the motion. And even assuming it was, the motion was denied so Pierce can show no prejudice.

**{¶31}** She also contends that trial counsel did not share the police video of the traffic stop with her. To support this contention, she cites comments she made at the hearing on the motion to withdraw as counsel. Her remarks were not made under oath or in an affidavit but were made to the trial court in response to questions from the judge as to whether she wanted to continue to retain her trial counsel. She also made sweeping, false statements such as her attorney did "no work" and she "couldn't get him to do nothing." Yet the record shows her attorney engaged in discovery, filed a motion to suppress, and a supplemental memorandum. The state informed the trial court that Pierce's attorney has "done everything that all other defense counsel, competent defense counsel does. He's asked for discovery. He's received and obviously reviewed it. You can see where defense counsel in our Matrix system access documents." Pierce's trial counsel also made statements to the trial court during that hearing and explained that he had multiple conferences with Pierce, but it was as if she had "total amnesia of what had happened." Therefore, it is not possible to ascertain with certainty whether the video was

---

[1] Here Pierce's PSI report was not originally part of the appellate record, but we requested that it be transmitted to us to ensure a complete record when we review her assignment of error concerning sentencing. *Gwynne* at ¶ 40 ("the appellate court *could* have requested this missing piece of the record, it was not required to do so" (Emphasis sic.)); *State v. Day*, 2019-Ohio-4816, 149 N.E.3d 122, ¶ 17 -18 (4th Dist.) ("PSI reports are part of the appellate record and when they are missing from the record and necessary for our review, we will sua sponte acquire them from the clerk.").

shared with Pierce. However, even if we assume that her attorney did not show her the police video, she has failed to argue that this prejudiced her. She does not argue that it would have changed her plea or that there was a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.

**{¶32}** Pierce has failed her burden to show that she received ineffective assistance of counsel. She was not bullied or threatened by her trial counsel to enter the no contest plea. Her counsel's motion to make the PSI report part of the record was neither deficient nor prejudicial. And, assuming she did not review the police video of the traffic stop, she failed to allege any prejudice resulting from this failure. We overrule her fourth assignment or error.

### C. Motion to Withdraw Plea

**{¶33}** For her third and fifth assignments of error, Pierce contends that the trial court erred in denying her motion to withdraw her plea. She contends that it was timely because it was made prior to sentencing and that she presented sufficient evidence to justify the withdrawal. She also argues that the trial court should have granted her motion to withdraw because the plea was not made knowingly, intelligently, and voluntarily, and her attorney coerced her into it. However, we rejected these arguments in overruling her second and fourth assignments of error. Her plea was made knowingly, intelligently, and voluntarily, and she was not coerced into it, therefore those were not grounds on which the trial court could have granted the motion to withdraw the plea.

**{¶34}** Crim.R. 32.1 states: "A motion to withdraw a plea of guilty * * * may be made only before sentence is imposed * * *." Although "a presentence motion to withdraw a guilty plea should be freely and liberally granted," "a defendant does not have an absolute

right to withdraw a plea prior to sentencing." *State v. Xie,* 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). " 'The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court' and will not be reversed absent an abuse of that discretion." *State v. McCoy*, 4th Dist. Gallia No. 19CA4, 2020-Ohio-3088, ¶ 12, quoting *Xie* at paragraph two of the syllabus. An "abuse of discretion" is "an unreasonable, arbitrary, or unconscionable use of discretion" or "a view or action that no conscientious judge could honestly have taken." *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

**{¶35}** We consider nine factors when reviewing a trial court's ruling on a presentence motion to withdraw a guilty plea:

> (1) whether "highly competent counsel" represented the defendant; (2) whether the trial court afforded the defendant "a full Crim.R. 11 hearing before entering the plea"; (3) whether the trial court held "a full hearing" regarding the defendant's motion to withdraw; (4) "whether the trial court gave full and fair consideration to the motion"; (5) whether the defendant filed the motion within a reasonable time; (6) whether the defendant's motion gave specific reasons for the withdrawal; (7) whether the defendant understood the nature of the charges, the possible penalties, and the consequences of his plea; (8) whether the defendant is "perhaps not guilty or ha[s] a complete defense to the charges"; and (9) whether permitting the defendant to withdraw his plea will prejudice the state.

(Alteration in *Howard*.) *State v. Howard*, 2017-Ohio-9392, 103 N.E.3d 108, ¶ 24 (4th Dist.), quoting *State v. McNeil*, 146 Ohio App.3d 173, 176, 765 N.E.2d 884 (1st Dist.). " ' "Consideration of the factors is a balancing test, and no one factor is conclusive." ' " *Id.*, quoting *State v. Jones*, 10th Dist. Franklin No. 15AP-530, 2016-Ohio-951, ¶ 14, quoting *State v. Zimmerman*, 10th Dist. Franklin No. 09AP-866, 2010-Ohio-4087, ¶ 13. " 'The ultimate question is whether there exists a "reasonable and legitimate basis for the withdrawal of the plea." ' " *Id.*, quoting *State v. Delpinal*, 2d Dist. Clark Nos. 2015-CA-97

& 2015-CA-98, 2016-Ohio-5646, ¶ 9, quoting *Xie* at 527. "A mere change of heart is not a legitimate and reasonable basis for the withdrawal of a plea." *Id.*

**{¶36}** Pierce does not explicitly address these nine factors in her brief. We construe the arguments in her third assignment of error as challenging the competency of counsel (the first factor) and the knowing, intelligent, and voluntary nature of her plea following a Crim.R. 11 hearing (the second factor). We have already found that her counsel was not ineffective when we overruled her fourth assignment of error. And, we found that her plea was entered knowingly, intelligently, and voluntarily after a proper Crim.R. 11 hearing when we overruled her second assignment of error. Therefore, we reject these arguments. Additionally, the trial court reviewed these two factors and found that she was represented by highly competent counsel and entered the plea knowingly, intelligently, and voluntarily following a full Crim.R. 11 hearing. Based on our review of the record, the trial court did not abuse its discretion in making these findings.

**{¶37}** However, in addition to the claim her counsel had coerced and threatened her into the plea, she contends her counsel was ineffective because at the change of plea hearing he "admitted that this case was too much pressure on him." She speculates that this pressure was likely the reason he coerced her into a no contest plea. However, Pierce fails to cite in the record trial counsel's statements about pressure. Trial counsel makes a remark about "pressure" when informing the trial court that Pierce has accepted the state's offer, but he was describing conflicting family pressure being placed upon Pierce to decide about the plea offer: "A lot of pressure and counter pressure and the recommendations from the family members that might not be the same recommendations." The trial court determined that Pierce was represented by highly

competent counsel; she was facing a potential 25.5-year prison term and her trial counsel brought that down to a range of 3 to 11 years, he "was certainly effective in his negotiating of this matter." We reject Pierce's argument and find it is not supported by the record.

**{¶38}** We construe her arguments in her fifth assignment of error as contesting the fourth factor (whether the trial court gave full and fair consideration to the motion) and fifth factor (timeliness of motion). For the fifth factor, Pierce contends that the motion was timely made because it was made before the sentencing hearing. The trial court found that it was not timely because it was faxed to the court and the state two days before the sentencing hearing. However, we find that her motion was timely and this factor weighs in her favor. *State v. Sow*, 10th Dist. Franklin No. 17AP-772, 2018-Ohio-4186, ¶ 28 (motion to withdraw plea was considered timely when it was filed two days before the sentencing hearing). Additionally, Pierce and her trial counsel disagreed concerning the plea withdrawal as is evident from his accompanying motion to withdraw as counsel. "An 'undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion.' " *State v. Burke*, 4th Dist. Lawrence Nos. 19CA1 & 19CA2, 2019-Ohio-4744, ¶ 16, quoting *State v. Bush*, 96 Ohio St.3d 235, 2002-Ohio-3993, 773 N.E.2d 522, ¶ 14. Here, it appears that there was no undue delay between the time the conflict in the attorney-client relationship arose and the time the motion to withdraw the plea was filed. Finally, a factor influencing our consideration of the timeliness of the motion here was the trial court's decision to grant Pierce's attorney's motion to withdraw as counsel. Because Pierce's counsel was

permitted to withdraw, the entire case was delayed while Pierce located new counsel, giving the parties ample time to address the motion to withdraw plea.

**{¶39}** As for the fourth factor, the trial court held a full evidentiary hearing on Pierce's motion to withdraw her no contest plea and gave her motion full and fair consideration. The record shows that following the evidentiary hearing, the trial court reviewed each of the nine factors listed.

**{¶40}** Pierce asserts that one reason for the motion to withdraw was her professed innocence. However, a defendant's claims of innocence are not sufficient to warrant withdrawal of a plea knowingly entered. *State v. Powers*, 4th Dist. Pickaway No. 03CA21, 2004-Ohio-2720, ¶ 18. All defendants who request a withdrawal of their plea base their request upon some claim of innocence. Here, Pierce makes only an unsubstantiated claim of innocence. She offered no evidence to support this claim. The state offered the testimony of one of the state troopers involved in the traffic stop to refute her claims of innocence. The trial court noted that the "baggie with meth" in her pants made her professed innocence "somewhat difficult." Therefore, the trial court could reasonably have concluded that Pierce's profession of innocence was nothing more than a change of heart, which is an insufficient basis for withdrawing a guilty plea. *Id.*

**{¶41}** She also contends she was induced to pleading no contest by her trial counsel's insistence that she would not have a fair trial "because the jury would be all white and she is African American." However, there was no evidence presented at the plea hearing to support this allegation. Pierce did not testify, nor did she subpoena her former trial counsel and present his testimony. The trial court admonished Pierce at the

hearing that without offering any evidence at the change of plea hearing, she was leaving

a very limited record on which the court could decide her motion:

> THE COURT: You understand that if you don't offer evidence you're giving me a very limited record in which to make my decision, which is almost exclusively the pretrial proceedings that have been here on the record and the Rule 11 colloquy that I conducted with your client before she was your client.

As we discussed previously, at the change of plea hearing Pierce's counsel expressed

concerns about taking her case to trial, but he did not identify race as one of his concerns.

He expressed general skepticism about going to trial "for a lot of obvious reasons." This

could refer to the fact that her criminal activity was caught on video tape (including the

presence of her eight-year-old child in the car) and would be played to the jury or – as

Pierce suggests – could refer to concerns of racial prejudice. His concern about "the

makeup of the jury," could be based on his belief that the population in Scioto County has

been disproportionately impacted by illegal drug trafficking and overdoses and thus views

drug traffickers unfavorably or – as Pierce suggests – they are racists. However, either

supposition is pure speculation because Pierce never called her attorney to testify at the

hearing on her plea withdraw. Similarly, Pierce made remarks at the hearing on her

attorney's motion to withdraw as counsel, in which she states, "My skin tone, he keeps

talking about that." But then she immediately followed up with her rejection of race as an

issue in her case, "I don't look at it that way. I just – I haven't looked at it as a black and

white situation." The trial court immediately affirmed Pierce's position, "Race doesn't have

anything to do with it in this court." Again, however, her counsel put neither Pierce's former

counsel nor Pierce on the stand to provide testimony about alleged racial concerns.

Pierce's unsworn statements rejected race as a concern she held. At the conclusion of

the hearing the trial court reiterated the lack of any evidence presented on the claim of

racial animus in the process or the jury pool:

> THE COURT:  Now, the Defense has raised issues and allegations about what Ms. Pierce was told by previous counsel. No one was [sic] subpoenaed that counsel here. She's not testified as to what those statements were, although her Counsel argued that, there's no evidence presented to the Court in support of that. So, the Court was unable to test the credibility of any evidence that – since there was none offered.

**{¶42}** Pierce failed to submit any evidence or provide any testimony at the

evidentiary hearing on her motion to withdraw her plea. In her brief, she contends that

she "was under no obligation" to present evidence or subpoena her former attorney or

her passenger/codefendant. She contends that statements made at the previous

proceedings (which we have discussed previously) and the written statements her

codefendant made that were placed in the PSI report were sufficient. Oddly, Pierce

appears to argue against having an evidentiary hearing on her motion. Typically,

defendants argue that the trial court erred by *not* providing an evidentiary hearing. *E.g.,*

*State v. Wolfson,* 4th Dist. Lawrence No. 02CA28, 2003-Ohio-4440. She describes any

effort to subpoena witnesses as "redundant." And she argues both that the trial court

should not have considered the PSI report as far as her own statements contained in it,

but also that it should have considered the PSI report as far as her codefendant's

statements contained in it. However, Pierce did not call her codefendant as a witness or

seek a written statement in affidavit form from him.

**{¶43}**  In *State v. Elkins*, 2016-Ohio-8579, 77 N.E.3d 360, ¶ 10-16 (4th Dist.), we

discussed the type of hearing that must be held on motions to withdraw pleas. We noted

that "[w]hile *Xie* states that a hearing is mandatory, it does not define the type

of hearing that is required." *Id.* at ¶ 10. We held that "a hearing complying with at least

the minimum mandates of due process is necessary." *Id.* The trial court retains discretion

to define the scope of the hearing to "reflect the substantive merits of the motion." *Id.*

> "The motion to withdraw the plea must, at a minimum, make a prima facie showing of merit before the trial court need devote considerable time to it. This approach strikes a fair balance between fairness to the accused and the preservation of judicial resources." "Bold assertions without evidentiary support simply should not merit the type of scrutiny that substantiated allegations would merit." (Citations omitted.)

*Wolfson*, 2003-Ohio-4440, ¶ 16. Here, the trial court afforded Pierce both fairness and

judicial resources in providing her an evidentiary hearing on her motion to withdraw her

plea. Pierce cannot fault the trial court for her own failure to take full advantage of it.

**{¶44}** After balancing the above factors, the majority of which weigh against

granting the motion to withdraw, we cannot conclude that the trial court's determination

that there was no reasonable and legitimate basis for the withdrawal of the no contest

plea was unreasonable, arbitrary, or unconscionable. The trial court did not abuse its

discretion when it denied the presentence motion to withdraw the no contest plea.

Accordingly, we overrule the third and fifth assignments of error.

### D. Felony Sentencing

**{¶45}** Pierce contends that the trial court erred when it sentenced her to a definite

and mandatory term of 8 years in prison, up to an indefinite term of up to 12 years. She

contends that the sentence is invalid because the trial court was punishing her "for

exercising her constitutional right to be proven guilty of the charges against her at trial"

because she had changed her mind and wanted to withdraw her plea. She argues that

"the burden is on the sentencing judge to demonstrate that it gave no improper weight to

Defendant Pierce's initial failure to plead guilty and that she was sentenced solely upon

the facts of the case and her personal history." In addition, she argues that when the trial

court considered the statutory factors, it did not give adequate weight to factors favorable to Pierce, such as her college enrollment, employment, care for a special needs son, and her lack of a history of criminal conduct. She argues that the trial court ignored statements made by her codefendant concerning his control and culpability and his criminal history. Finally, she argues that the trial court abused its discretion in giving Pierce a longer sentence than her codefendant.

### 1. Standard of Review

**{¶46}** When reviewing felony sentences, appellate courts apply R.C. 2953.08(G)(2), which specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

**{¶47}** A defendant bears the burden to establish, by clear and convincing evidence, 1) that a sentence is either contrary to law or 2) that the record does not support the specified findings under R.C. 2929.13(B), R.C. 2929.13(D), R.C. 2929.14(B)(2)(e), 2929.14(C)(4), or R.C. 2929.20(I). *State v. Shuler*, 4th Dist. Meigs No. 22CA8, 2023-Ohio-2444, ¶ 14.

> Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

*Ogle v. Hocking Cnty. Sheriff,* 4th Dist. No. 22CA9, 2023-Ohio-1446, 214 N.E.3d 31, ¶ 30.

**{¶48}** "A court reviewing a criminal sentence is required by R.C. 2953.08(F) to review the entire trial-court record, including any oral or written statements and presentence-investigation reports." *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 20, citing R.C. 2953.08(F)(1) through (4). However, "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones,* 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 42. Therefore, appellate courts cannot review a felony sentence when appellant's sole contention is that the trial court improperly considered the factors of R.C. 2929.11 or 2929.12 when sentencing. *Id.*

**{¶49}** Additionally, "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Jones* at ¶ 32. "[O]therwise contrary to law" means " 'in violation of statute or legal regulations at a given time.' " *Id.* at ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990), cited with approval in *Bryant* at ¶ 22. Thus, for example, "when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law." *Bryant* at ¶ 22; *Shuler* at ¶ 17.

2. Pierce's Sentence is Supported by the Record and Is Not Contrary to Law

**{¶50}** " '[A] sentence is generally not contrary to law if the trial court considered the R.C. 2929.11 purposes and principles of sentencing as well as the R.C. 2929.12

seriousness and recidivism factors, properly applied post[-]release control, and imposed a sentence within the statutory range.' " *State v. Perry*, 4th Dist. Pike No. 16CA863, 2017-Ohio-69, ¶ 21, quoting *State v. Brewer*, 2014-Ohio-1903, 11 N.E.3d 317, ¶ 38 (4th Dist.).

**{¶51}** At both the sentencing hearing and in its judgment entry, the trial court stated that it considered the R.C. 2929.11 purposes and principles of sentencing and the R.C. 2929.12 seriousness and recidivism factors, properly applied post-release control, and imposed an 8-year mandatory minimum with an indefinite maximum of 12 years, which is within the statutory range for a first-degree felony. Contrary to Pierce's argument, a trial court is *not* required to make its findings under R.C. 2929.11 or R.C. 2929.12 on the record. Rather, a trial court is required only to "carefully consider" the factors in R.C. 2929.11 and R.C. 2929.12 when imposing sentence, and is not required to make any "findings," or state "reasons" regarding those considerations. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38. R.C. 2953.08(G)(2)(b) does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and R.C. 2929.12. *State v. Moore*, 4th Dist. Washington No. 20CA35, 2021-Ohio-3149, ¶ 7.

**{¶52}** Pierce argues that the seriousness and recidivism factors under R.C. 2929.12(D)(2) (the offender's history of criminal convictions) and R.C. 2929.12(E)(3) (offender led a law-abiding life for a significant number of years) do not support her sentence. In other words, Pierce disagrees with the trial court's analysis and balancing of these factors.

**{¶53}** The Supreme Court of Ohio summarized the applicability of R.C. 2929.11 and 2929.12 in sentencing decisions:

In Ohio, two statutory sections serve as a general guide for every sentencing. First, R.C. 2929.11(A) provides that the overriding purposes of felony sentencing "are to protect the public from future crime by the offender and others and to punish the offender." To achieve these purposes, the trial court "shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution." *Id.* The sentence must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). * * *

Second, R.C. 2929.12 specifically provides that in exercising its discretion, a trial court must consider certain factors that make the offense more or less serious and that indicate whether the offender is more or less likely to commit future offenses. * * * [A]n offender's conduct is considered less serious when there are "substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense." R.C. 2929.12(C)(4). R.C. 2929.12(C) and (E) also permit a trial court to consider "any other relevant factors" to determine that an offense is less serious or that an offender is less likely to recidivate.

*State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, ¶ 17–18.

**{¶54}** The trial court stated that it considered both the principles and purposes of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. Specifically, the trial court considered the PSI report and the additional following matters:

I've considered her lack of prior record, considered the large amounts of narcotics involved in this traffic stop, considered the fact that her child was involved, and to the extent the child was in the car during this traffic stop. I've considered the circumstances of the stop, as far as the driving and having to be brought out at gunpoint. I've considered all those arguments that Counsel has made here today, and the additional facts and factors that are included in the presentence investigation. (OR 98, Tr. 53)

**{¶55}** Although Pierce disagrees with the trial court's analysis and its balancing of the seriousness and recidivism factors in R.C. 2929.12, in imposing a sentence it is the role of the trial court to determine the weight afforded to any particular statutory factors,

mitigating grounds, or other relevant circumstances. *See State v. Day,* 2019-Ohio-4816, 149 N.E.3d 122, ¶ 19 (4th Dist.); *State v. Bailey*, 4th Dist. Highland No. 11CA7, 2011-Ohio-6526, ¶ 34, citing *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000) ("in considering the factors set forth in R.C. 2929.12, the trial court has 'the discretion to determine the weight to assign a particular statutory factor' "); *State v. Kuykendall*, 2017-Ohio-7280, 97 N.E.3d 32, ¶ 17 (12th Dist.), quoting *State v. Steger*, 12th Dist. Butler No. CA2016-03-059, 2016-Ohio-7908, ¶ 18 ("Although appellant disagrees with the trial court's analysis and its balancing of the seriousness and recidivism factors in R.C. 2929.12, it is '[t]he trial court [that], in imposing a sentence, determines the weight afforded to any particular statutory factors, mitigating grounds, or other relevant circumstances' ").

**{¶56}** Pierce has failed to meet her burden to establish that her prison sentence was clearly and convincingly not supported by the record. "Simply because the court did not balance the factors in the manner appellant desires does not mean that the court failed to consider them, or that clear and convincing evidence shows that the court's findings are not supported by the record." *State v. Butcher*, 4th Dist. Athens No. 15CA33, 2017-Ohio-1544, ¶ 87. After reviewing the record, we find no clear and convincing evidence that the court erred in balancing the factors in R.C. 2929.12 or in considering the principles and purposes of sentencing under R.C. 2929.11.

**{¶57}** Pierce also contends that the sentence reflects the trial court punishment of her "because she exercised her constitutional rights and/or demanded that her guilt be proven at trial." However, Pierce pled no contest; she cites no place in the record to

support her contention that the judge sentenced her in a retaliatory manner. At the change of plea hearing, the judge told her he did not care whether she accepted the plea or not, "Ms. Pierce, I don't care what you do, it's all the same to me, you take it or you don't take it. Either way, we have trials here." Pierce cites to no place in the sentencing transcript that even creates the appearance that the trial court enhanced her sentence in a vindictive or retaliatory manner. *See State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, 825 N.E.2d 637 (4th Dist.).

**{¶58}** Finally, she contends that it was "unsound" that her codefendant received a lighter sentence than she did. However, "that fact alone does not require a finding that the trial court erred in its sentencing decision. * * * [A] sentence is not contrary to law because the trial court failed to impose a sentence that is the same as another offender who committed similar conduct." *State v. Graham,* 12th Dist. Warren No. CA2013–07–066, 2014-Ohio-1891, ¶ 14-15. Consistency in sentencing does not mean uniformity. *State v. Micomonaco,* 12th Dist. Butler No. CA2011–07–139, 2012–Ohio–5239, ¶ 49 ("A consistent sentence is not derived from a case-by-case comparison, but from the trial court's proper application of the statutory sentencing guidelines." ).

**{¶59}** The language of R.C. 2929.11(B) provides that a felony sentence must be "consistent with sentences imposed for similar crimes committed by similar offenders." There is no requirement that codefendants receive equal sentences. *State v. Adams,* 2016-Ohio-7772, 84 N.E.3d 155, ¶ 44 (4th Dist.), citing *State v. Gibson,* 8th Dist. Cuyahoga No. 98725, 2013-Ohio-4372. ¶ 76. "Each defendant is different and nothing prohibits a trial court from imposing two different sentences upon individuals convicted of similar crimes." *State v. Wickham,* 5th Dist. Muskingum No. CT2006–0084, 2007-Ohio-

1754, ¶ 29, citing *State v. Aguirre,* 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, ¶ 50. When that happens, "the task of the appellate court is to determine whether the sentence is so unusual as to be outside the mainstream of local judicial practice. We bear in mind that although offenses may be similar, there may be distinguishing factors that justify dissimilar sentences." *State v. Beasley,* 8th Dist. Cuyahoga No. 82884, 2004-Ohio-988, ¶ 24 (internal citation omitted).

{¶60} In *Gibson, supra,* the defendant raised a "consistency" argument. The *Gibson* court noted that to support a contention that a sentence is disproportionate to sentences imposed upon other offenders, the defendant must raise this issue before the trial court and present some evidence, however minimal, to provide a starting point for analysis and to preserve the issue for appeal. *State v. Jones,* 8th Dist. Cuyahoga No. 99121, 2013-Ohio-3141, ¶ 17. In *Gibson*, the record revealed that Gibson's counsel did not make any proportionality argument at the trial court level. Thus, the appellate court summarily overruled Gibson's assignment of error without undertaking a review of it.

{¶61} In *State v. Montanez–Roldon,* 8th Dist. Cuyahoga No. 103509, 2016-Ohio-3062, the appellate court observed that "[a] consistency-in-sentencing determination, along with all sentencing determinations pursuant to R.C. 2929.11 and 2929.12, is a fact-intensive inquiry that does not lend itself to being initially reviewed at the appellate level." *Id.* at ¶ 14. The court held:

> "[A]ny review must begin with the defendant producing a record for the trial court's consideration before the final sentence is imposed. As courts have long concluded, a "defendant must raise [the consistency-in-sentencing] issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal." (Emphasis added.) *State v. Spock,* 8th Dist. Cuyahoga No. 99950,

2014-Ohio-606 [2014 WL 688793], ¶ 37, citing *State v. Lang,* 8th Dist. Cuyahoga No. 92099, 2010-Ohio-433 [2010 WL 457140]; *State v. Picha,* 8th Dist. Cuyahoga No. 102506, 2015-Ohio-4380 [2015 WL 6392638], ¶ 9. Without evidence provided on the record at sentencing upon which to base an R.C. 2929.11(B) argument on appeal, and without any other arguments for us to consider for the purpose of declaring Montanez–Roldon's sentence contrary to law, we cannot review his final sentence as being contrary to law pursuant to R.C. 2953.08(A)(4)." (Brackets sic.).

*Id.*

**{¶62}** We have reviewed Pierce's sentencing transcript, and it makes no mention of Pierce's codefendant's sentence or that Pierce's sentence was inconsistent. However, after *Jones, infra*, it is not clear that this type of appellate review is provided for under R.C. 2953.08(G)(2).

> The narrow holding in *Jones* is that R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12. *See Jones* at ¶¶ 31, 39. Nothing about that holding should be construed as prohibiting appellate review of a sentence when the claim is that the sentence was imposed based on impermissible considerations—i.e., considerations that fall outside those that are contained in R.C. 2929.11 and 2929.12. Indeed, in *Jones*, this court made clear that R.C. 2953.08(G)(2)(b) permits appellate courts to reverse or modify sentencing decisions that are " 'otherwise contrary to law.' " *Jones* at ¶ 32, quoting R.C. 2953.08(G)(2)(b). This court also recognized that "otherwise contrary to law" means " 'in violation of statute or legal regulations at a given time.' " *Id.* at ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990). Accordingly, when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law. Claims that raise these types of issues are therefore reviewable.

*State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 22 (discussing *State v. Jones,* 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649).

**{¶63}** Pierce's claim is that her sentence is "unsound" because it was greater than her codefendant's, which raises the question of whether the record supports the trial court's application of the "consistency" purpose in R.C. 2929.11(B). It does not raise a

question about whether "a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11." *Id.* However, because she did not raise this consistency issue at sentencing with the trial judge, we can summarily reject this argument for that reason alone without resolving whether *Jones, supra,* allows us to review it. Moreover, we have already noted that the trial court weighed the purposes and principles of R.C. 2929.11 and the seriousness and recidivism factors of R.C. 2929.12.

**{¶64}** Pierce has failed to meet her burden to establish that her prison sentence was clearly and convincingly not supported by the record or that it was contrary to law. Therefore, we overrule Pierce's first assignment of error.

IV. CONCLUSION

**{¶65}** Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
       Michael D. Hess, Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**